IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:26-CV-35-BO-KS

| | | |
|---|---|---|
| DR. CALVIN NORTON,<br><br>Plaintiff,<br><br>v.<br><br>OFFICE OF THE DISTRICT ATTORNEY, 15TH JUDICIAL JOHN DAVID, DISTRICT ATTORNEY, in his official and individual capacities, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This cause comes before the Court on defendants' motions to dismiss and for judgment on the pleadings, as well as plaintiff's motions for temporary restraining order and preliminary injunction, entry of default, to disqualify counsel, to strike answer, to dismiss, and for leave to file an amended complaint. The appropriate responses and replies have been filed, or the time for doing so has expired, and in this posture all motions are ripe for disposition.

## BACKGROUND

Plaintiff, who proceeds *pro se*, initiated this action by filing a complaint on February 25, 2026. [DE 1]. Plaintiff sought an emergency temporary restraining order, which the Court denied by entry of an order on March 2, 2026. [DE 2]; [DE 6]. Plaintiff has filed a renewed motion for temporary restraining order and preliminary injunction. [DE 8]. All defendants have now appeared and filed dispositive motions as to the claims against them. [DE 13]; [DE 21]; [DE 37]; [DE 39]; [DE 62]; [DE 67].

Plaintiff has moved for leave to file an amended complaint. [DE 30]. Plaintiff requests leave to amend in order to add newly discovered facts which he contends support his claims, clarify

his existing allegations, and address purported legal deficiencies. In light of the applicable standard, Fed. R. Civ. P. 15(a), and the early stage of the proceeding, the Court will permit plaintiff leave to amend. However, in the exercise of its discretion, rather than deny defendants' motions as moot, the Court will consider defendants' motions as against the allegations in the amended complaint. *See Scott v. Nuvelle Fin. Servs., LLC*, No. WDQ-09-3110, 2010 U.S. Dist. LEXIS 40225, at *6 (D. Md. Apr. 23, 2010).

Accordingly, the Court recounts the facts alleged in the amended complaint. [DE 30-1]. In February 2020, Courtney Heater was found dead inside the home of Julian Fipps in Columbus County, North Carolina. The autopsy listed fentanyl toxicity as a cause of death. Plaintiff was thereafter contacted by Heater's mother, who provided him with investigative materials from a private investigator who had been retained by the Heater family. The investigator files documented no history of fentanyl use by Ms. Heater. Plaintiff alleges that Ms. Heater's death was not investigated as a homicide because defendant Anthony Juan Fipps, Julian Fipps's father, and the Sheriff are in a Columbus County gang. Plaintiff publicly criticized the Columbus County Sheriff's Office and the District Attorney's Office, calling Ms. Heater's death a homicide.

On January 9, 2023, Julian Fipps was killed in Columbus County. Xavier Thomas was charged with Julian Fipps's death. In August 2023, plaintiff received a flash drive in the mail from an anonymous sender which contained criminal discovery in the State's case against Thomas. Plaintiff disseminated some of the discovery materials, which included crime scene photographs, witness statements, and investigative notes, on social media platforms and discussed them publicly. Defendant Fipps reposted some of the discovery materials on social media and created a Facebook profile entitled "Calvin Norton Exposed."

After plaintiff posted the discovery materials in the Thomas case, plaintiff received demands from the Sheriff's Office and the District Attorney's Office to stop discussing and publishing information regarding the Thomas prosecution. Sheriff Bill Rogers and District Attorney Jon[1] David made public media statements criticizing plaintiff's actions. Plaintiff was contacted by defendant Anthony Jernigan with the State Bureau of Investigation regarding his social media postings. Defendants Mitchell Morton and Heather Payne Brittain, assistant district attorneys, twice sought a show cause order against plaintiff regarding his possession of the discovery materials; both motions were denied by the presiding superior court judge. Defendants Morton and Brittain sought a gag order against plaintiff during the trial of Xavier Thomas, which was denied. Defendant Fipps's wife sought entry of a no-contact order against plaintiff, which was denied. Thomas's trial ended in a hung jury.

Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 against all defendants for First Amendment retaliation and prior restraint as well as equal protection discrimination. Plaintiff also brings a state law claim for defamation against all defendants.

I. Motions for entry of default, to strike, and to disqualify counsel

Entry of default is appropriate where a defendant has been properly served and has failed to answer or otherwise respond to the complaint within the time provided. Fed. R. Civ. P. 55(a); *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant."). Plaintiff seeks entry of default against defendants Fipps, David, Morton, Brittain, Jernigan, and Western Surety Insurance Company. Defendants David, Morton, Brittain, and Jernigan argue that plaintiff failed to effect proper service

[1] Although he appears in the amended complaint as John David, there does appear to be a dispute that the proper spelling of the district attorney's name is Jon David.

prior to seeking entry of default, and all of these defendants have appeared through counsel and responded to the complaint.

In general, this circuit has a strong preference that defaults be avoided and that matters are disposed of on the merits. *Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Accordingly, the Court denies plaintiff's motions for entry of default in favor of considering the merits of plaintiff's claims.

Plaintiff next challenges defendant Rogers' answer as being filed by an attorney not admitted to practice in this district, and he seeks to strike the answer and sanctions. The Court's records reveal that counsel who filed an answer on behalf of defendant Rogers, Misty Jorgensen, is admitted to practice in this district. Plaintiff's motion to strike and for sanctions is denied.

Plaintiff also seeks to disqualify counsel for defendant Fipps. He argues that counsel has appeared in prior cases on behalf of the Columbus County Sheriff's Office and that counsel's appearance on behalf of Fipps creates a substantial risk that strategies and communications could be used to benefit Fipps at the expense of other parties. "Disqualification is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 517 (M.D.N.C. 1996). To show that disqualification is required, the moving party must show that "(1) an attorney-client relationship existed with the alleged former client; and (2) the former representation and the current controversy [are] substantially related." *Id.*

Plaintiff has failed to demonstrate that disqualification of Fipps's counsel is necessary. Counsel has filed an affidavit in which he declares that he has not advised or consulted with Sheriff Rogers or Columbus County regarding the matters at issue in this case and that he is not currently

representing Rogers or Columbus County in active litigation. *See* [DE 24]. Plaintiff has proffered no evidence or argument which would demonstrate the contrary. His motion to disqualify counsel and for related relief is denied.

II. Motions to dismiss and for judgment on the pleadings

Defendants have moved to dismiss the claims against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Rogers has filed an answer and has moved for judgment on the pleadings.

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what

the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where, as here, the complaint is filed *pro se*, courts construe the complaint liberally and must hold the filing "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation and citation omitted). "But 'liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure.'" *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020)).

A Rule 12(c) motion is considered under the same standard as a Rule 12(b)(6) motion. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). The primary distinction between Rules 12(b)(6) and 12(c) is that Rule 12(c) permits a court to consider a defendant's answer in addition to plaintiff's complaint. However, because the Court considers plaintiff's amended complaint, it does not consider defendant Rogers' answer to the original complaint in deciding the instant motion.

At the outset, the Court grants plaintiff's motion to voluntarily dismiss defendant Western Surety Company. Western Surety Company's motion to dismiss is therefore denied as moot and plaintiff's motion for entry of default against Western Surety is denied.

(A) Plaintiff's claims under 42 U.S.C. § 1983

Defendants Fipps and Lee have both moved to dismiss plaintiff's § 1983 claims against them by arguing that they are not state actors. The Court agrees. Defendant Fipps is the father of Julian Fipps. Defendant Julius Lee was Xavier Thomas's appointed counsel in the trial for Julian Fipps' murder, until he was permitted to withdraw. *See* [DE 22] at 8-12.[2]

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove that one of his rights, secured by the Constitution or laws of the United States, has been violated, and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To act under color of state law, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615–16 (4th Cir. 2009) (quoting *Debauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999)). There are generally four circumstances under which private conduct may be considered state action: "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." *Debauche*, 191 F.3d at 507 (quoting *Andrews v. Federal Home Loan Bank of Atlanta,* 998 F.2d 214, 217 (4th Cir.1993)).

There are no allegations which would support that defendant Fipps is a state actor. Plaintiff alleges that defendant Lee acted under color of state law by coercion and in conspiracy with the state prosecutors, law enforcement, and the state court to violate plaintiff's rights. In his capacity

---

[2] Citations to page numbers of documents filed on the Court's docket are to the page numbers generated by the Court's electronic case filing system.

as appointed counsel for Thomas, defendant Lee did not act under color of state law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). And none of the circumstances which would support state action by a private party are plausibly alleged to be present here. To the extent plaintiff alleges that defendants Fipps and Lee were part of a conspiracy to violate his constitutional rights, *see Dennis v. Sparks*, 449 U.S. 24, 29 (1980), his allegations in support of such a theory are too vague and conclusory to be plausible. *See, e.g.*, [DE 30-1] ¶¶ 12, 14, 81, 111, 128. Plaintiff has failed to state a § 1983 claim against Fipps and Lee. These claims against defendants Fipps and Lee are dismissed.

The Court next considers plaintiff's § 1983 claims against the District Attorney's Office defendants, David, Morton, and Brittain, and defendant Jernigan with the State Bureau of Investigation (SBI). Each of these defendants has been named in both their official and individual capacities.

These defendants have raised the defense of Eleventh Amendment immunity as to the claims against them in their official capacities. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).[3] This guarantee applies not only to suits against the state itself but also to suits where "one of [the state's] agencies or departments is named as the defendant[,]" as well as where state officers are sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100; 100-102 (1984). The

[3]Though it appears that the Fourth Circuit has not definitively decided whether Eleventh Amendment immunity should be considered under 12(b)(1), 12(b)(2), or 12(b)(6), the Court considers it under 12(b)(1). *See Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012); *Kirby v. N. Carolina State Univ.*, No. 5:13-CV-850-FL, 2015 WL 1036946, at *3 (E.D.N.C. Mar. 10, 2015), *aff'd*, 615 F. App'x 136 (4th Cir. 2015).

Eleventh Amendment bars suit against a state in federal court regardless of the nature of the relief that is sought, *id.* at 100, unless one of the limited exceptions, such as consent or abrogation, applies. *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012).

Plaintiff does not appear to dispute that the Eleventh Amendment bars his claims against these defendants in their official capacities for monetary damages. [DE 65] at 7-8. He does appear to argue that he seeks prospective injunctive relief, and that his claims may proceed under *Ex Parte Young*. Under *Ex Parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Where the effect of a declaratory judgment and injunction would be to "undo accomplished state action[,]" the *Ex Parte Young* exception does not apply. *Id.* at 628. Moreover, "even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016).

Plaintiff does not seek prospective injunctive relief. Rather, he seeks retrospective relief for the alleged chilling of his First Amendment rights and denial of equal protection, specifically seeking an injunction which would prevent defendants from engaging in "further unconstitutional retaliation," without identifying any ongoing violation of his constitutional rights. [DE 30-1] ¶ 156. That plaintiff alleges that he seeks prospective and declaratory injunctive relief does not change the result. *Id.* ¶ 138. Plaintiff's official capacity claims against the District Attorney's Office and SBI defendants are dismissed without prejudice.

The claims against defendants Morton and Brittain in their individual capacities are barred by absolute prosecutorial immunity. Absolute prosecutorial immunity protects district attorney

defendants from liability for those activities which are traditionally associated with prosecution of a case, *Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006), and it "safeguards the process, not the person[.]" *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018). But absolute immunity does not extend to activities outside the scope of traditional prosecutorial functions, such as administrative and investigatory actions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Examples of activities within a prosecutor's duties as an advocate, and for which she enjoys absolute immunity, include evaluating evidence, seeking an arrest warrant, and presenting evidence at trial. *Nero*, 890 F.3d at 118.

Plaintiff alleges that Morton and Brittain sought three court orders against him related to his speech, each of which was denied. The orders Morton and Brittain sought were related to their prosecution of Xavier Thomas; though their actions were not necessarily activities which are traditionally associated with the prosecution of a case, they were nonetheless "intimately associated with the judicial phase of the criminal process[.]" *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). Moreover, "a prosecutor should not be stripped of immunity for seeking approval of official actions from a court. [A plaintiff] can hardly be heard to complain about a prosecutor's resort to the judicial process, which the Supreme Court has extolled as 'largely self-correcting,' and designed for the protection of individual liberties and rights." *Dababnah v. Keller-Burnside*, 208 F.3d 467, 470–71 (4th Cir. 2000) (internal citation omitted) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 522 (1985)). Accordingly, Morton and Brittain are entitled to absolute prosecutorial immunity for plaintiff's § 1983 claims against them.

Defendants David and Jernigan argue that they are entitled to qualified immunity for plaintiff's § 1983 claims against them in their individual capacities. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can

reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiff has not plausibly alleged a violation of his rights under the First Amendment or the Equal Protection Clause of the Fourteenth Amendment. Defendants David and Jernigan are therefore entitled to qualified immunity.[4]

Plaintiff alleges a claim under the First Amendment for retaliation and prior restraint. "As a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (cleaned up). To establish a First Amendment retaliation claim under § 1983, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (cleaned up). "A prior restraint is an administrative or judicial order forbidding protected speech issued before such speech is to occur." *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*,

[4] And, to the extent Morton and Brittain are not protected by absolute prosecutorial immunity, plaintiff has failed to state a First Amendment or equal protection claim against them as well.

355 F. Supp. 3d 386, 411 (E.D. Va. 2018) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)).

Plaintiff fails to plausibly allege any prior restraint on his speech or First Amendment retaliation. First, plaintiff specifically alleges that the state court declined to enter any gag order or other order restricting plaintiff's speech, and plaintiff has not identified any administrative order or other action which restricted his speech. Moreover, all of the conduct about which plaintiff complains took place *after* he published the criminal discovery materials online and spoke publicly about the case, and thus they cannot support a prior restraint claim. Second, plaintiff has not plausibly alleged that any defendant took action which adversely affected his rights under the First Amendment. "Not all retaliatory conduct tends to chill First Amendment activity . . . and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to her exercise of First Amendment rights[.]" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (citations omitted).

Plaintiff has alleged that defendant David made statements to the press criticizing plaintiff's actions and suggesting that plaintiff had an improper motive in publishing the criminal discovery materials. *See* [DE 30-1] ¶ 37. Plaintiff has further alleged that defendant Jernigan contacted him regarding his online speech. *Id.* ¶ 39. Plaintiff offers no additional factual support which would push his allegations of First Amendment retaliation "across the line from conceivable to plausible[.]" *See Twombly*, 550 U.S. at 570. Plaintiff has failed to plausibly allege a violation of his First Amendment rights, and defendants David and Jernigan are alternatively entitled to qualified immunity on plaintiff's First Amendment claims.

Plaintiff's equal protection claim fails for similar reasons. Plaintiff alleges that defendants David and Jernigan "singled out Plaintiff for adverse treatment" based on his race and status a civil

rights leader and public figure. [DE 30-1] ¶¶ 115-116. Plaintiff alleges that defendant Fipps, a white male, was treated differently by defendants as he was not targeted for investigation after posting the criminal discovery materials. *Id.* ¶ 112. An equal protection claim "requires a plaintiff to demonstrate that the government's enforcement process 'had a discriminatory effect and that it was motivated by a discriminatory purpose.' Thus, a plaintiff must show not only that similarly situated individuals were treated differently, but that there was 'clear and intentional discrimination.'" *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 634–35 (4th Cir. 2016) (internal citation omitted).

Plaintiff's amended complaint does not allege the enforcement of any law against plaintiff – plaintiff specifically alleges that he was not charged with a crime relating to his publishing the criminal discovery files, that he was not under investigation, and he was not the subject of any court orders, subpoenas, or written directives. *See* [DE 30-1] ¶¶ 40-41; 77. Moreover, plaintiff has failed to plausibly allege any clear and intentional discrimination on the part of defendants David or Jernigan. Rather, he recites in conclusory fashion that the defendants' actions were motivated by discriminatory animus. *Id.* ¶ 117. Plaintiff has failed to plausibly allege an equal protection claim, and defendants David and Jernigan are alternatively entitled to qualified immunity.

Finally, the Court considers defendant Sheriff Rogers' motion for judgment on the pleadings as to plaintiff's § 1983 claims. Sheriff Rogers raises the defense of qualified immunity as to the § 1983 claims against him in his individual capacity. Plaintiff's amended complaint alleges that defendant Rogers issued a statement with defendant David on August 29, 2023, criticizing plaintiff's publication of the criminal discovery files. *Id.* ¶¶ 37; 72. As discussed above, plaintiff has failed to plausibly allege a violation of his First Amendment rights based on this conduct. Plaintiff's equal protection claim does not appear to specifically address any conduct by

defendant Rogers, and plaintiff has, for the reasons discussed above, failed to plausibly allege an equal protection claim. Because plaintiff has failed to plausibly allege a violation of his constitutional rights, his official capacity claim against Rogers also fails. *See Russ v. Causey*, 732 F. Supp. 2d 589, 604 (E.D.N.C. 2010). The § 1983 claims against Rogers are properly dismissed for failure to state a claim and Rogers is alternatively entitled to qualified immunity in his individual capacity.

In sum, plaintiff's § 1983 claims against all defendants are dismissed.

(B) State law defamation claim

As the basis for this Court's jurisdiction has dropped away, and the case is in its early stages, the Court, in the exercise of its discretion, dismisses plaintiff's remaining state law claim. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995); 28 U.S.C. § 1367(c).

III. Motion for temporary restraining order and preliminary injunction

To be entitled to a temporary restraining order or preliminary injunction, a party must establish, *inter alia*, a likelihood of success on the merits. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As plaintiff's § 1983 claims are subject to dismissal, and the Court declines to exercise jurisdiction over his remaining state law claim, plaintiff has failed to demonstrate he is entitled to the "extraordinary and drastic remedy" of a temporary restraining order or preliminary injunction. *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted). His motion is therefore denied.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion to amend his complaint [DE 30] is GRANTED and the clerk is DIRECTED to file the amended complaint [DE 30-1] as of the date of entry of this order. Plaintiff's motions for entry of default [DE 16]; [DE 31]; [DE 32]; [DE 46]

are DENIED. Plaintiff's motion to disqualify counsel and motion to strike answer and for sanctions [DE 17]; [DE 18] are DENIED.

Plaintiff's motion to dismiss defendant Western Surety Company [DE 43] is GRANTED and defendant Western Surety is DISMISSED. Defendant Western Surety's motion to dismiss [DE 37] is DENIED AS MOOT. The remaining defendants' motions to dismiss or for judgment on the pleadings [DE 21]; [DE 39]; [DE 62]; [DE 67] are GRANTED. Defendant Fipps's motion to dismiss the original complaint [DE 13] is DENIED AS MOOT in light of the filing of his motion to dismiss the amended complaint. Plaintiff's motion for temporary restraining order and preliminary injunction [DE 8] is DENIED.

Plaintiff's claims brought under 42 U.S.C. § 1983 against defendants David, Morton, Brittain, and Jernigan in their official capacities are DISMISSED without prejudice, and his remaining § 1983 claims are DISMISSED with prejudice. The Court declines to exercise jurisdiction over plaintiff's state law defamation claim, and it is DISMISSED without prejudice. Plaintiff's motion for temporary restraining order and preliminary injunction [DE 8] is DENIED.

The clerk is DIRECTED to enter judgment in favor of defendants and against plaintiff and to close this case.

SO ORDERED, this 16 day of November 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE